# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 CR 510 - 4 | **DATE** | 3/16/2001 |
| **CASE TITLE** | U.S.A. vs. Stevenson | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Amended Memorandum Opinion and Order denying defendant's motion for new trial and his motion for a downward departure.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAR 2 0 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 855 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| MPJ | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice / mailing deputy initials | |

DOCKETED
MAR 19 2001

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| v. ) | No. 97 CR 510-4 |
| CARL STEVENSON, ) | |
| Defendant. ) | |

## AMENDED MEMORANDUM OPINION AND ORDER

Carl Stevenson is a mentally retarded African American man, 29 years old at this writing. In 1998, he was convicted of drug charges relating to a gang conspiracy to distribute crack cocaine in Chicago, Illinois. Mr. Stevenson moves for a new trial on the basis that he should have been allowed to present expert testimony at trial that would have shown that his mental impairments prevented him from having the requisite specific intent. He also moves for a downward departure. I deny these motions.

The conspiracy of which Mr. Stevenson was convicted involved a gangland crack dealing operation run out of the Lathrop Homes, a public housing project in Chicago. The conspiracy was run by a gang called the Project Kings, a subgroup of the Latin Kings. From July 1995 to July 1997, the gang sold crack on a regular basis at the Lathrop Homes, using minors as runners and for other purposes. It maintained a monopoly on crack sales at the projects using threats and force.

Mr. Stevenson had lived at the Lathrop homes for 13 years, and had been a gang member since he was about 17. Although he also sold crack cocaine for the Project Kings, Mr. Stevenson was an enforcer, responsible, among other things, for maintaining armed security patrols to protect against the encroachment on the Project Kings' territory by other gangs. He stated to the authorities after his arrest that part of his role was to keep track of the weapons used by security, and to make sure that members of the patrols were armed. Stevenson said that the arsenal maintained by the gang included one 12-gauge shotgun, a .22 caliber rifle, two 9mm pistols, three .357 magnum pistols, four "Bull Dogs" (short, fat-barreled revolvers), a Desert Eagle fully automatic machine gun, two .30-.30 lever action scoped rifles, and one .380 pistol. Individual members, he said, also had their personal weapons. The guns were not merely for show, but were to be used against members of other gangs who attempted to come into the projects. Mr. Stevenson believed that about 50 firearms had been thrown into the Chicago River after having been used in gang related shootings in the mid-1990s.

Mr. Stevenson was responsible for discipline, including supervising beatings of gang members who broke a rule of the Project Kings. He admits to supervising about six or seven such beatings. His activities also included, for example, in February 1997, criticizing a gang member named Roosevelt McMullen, then on security detail, for shooting someone named "Conn" (phonetic) twice in the

legs, using a gang-owned gun, because Conn had smoked the crack he was supposed to sell. Mr. Stevenson told McMullen that he had done something dumb, and the neighborhood would be heated up by police because he had been trigger happy; he should have "done something to Conn with his hands" instead of shooting him, because Conn was "just a dope fiend." In July 1997, another enforcer,[1] Wilfredo Hernandez, shot a Gangster Disciple named Elvis. Mr. Stevenson asked him why he did it himself, explaining that "shorties," or minors, are supposed to be used for that sort of thing.

Mr. Stevenson and 20 others were arrested in July 1997, and charged with various drug crimes. Some pleaded guilty; others, including Mr. Stevenson, went to trial. He was convicted of conspiracy to possess cocaine base with intent to distribute, in violation of 21 U.S.C. §§ 846; use of persons under age 18 in violation of § 861(a)(2), and distribution of a controlled substance, § 841(a)(1). I sentenced the other defendants, but after Mr. Stevenson moved for a downward departure, I became concerned about whether his mental limitations might have made it unfair and unlawful to hold him accountable for his acts, or indeed, whether he was competent to stand trial at all. Accordingly, I allowed Mr. Stevenson to produce evidence about his limitations, and, granting defense motions for medical examinations, ordered him evaluated at

---

[1] However, Mr. Stevenson also said that he had been demoted from his enforcer position in late spring of 1997, because he had not been doing his job well.

the Isaac Ray Center here in Chicago, at the Federal Medical Center in Rochester, Minnesota, and by a psychiatrist at the University of Chicago Department of Psychiatry. I also allowed him to provide medical testimony of his own. The results of the examinations, which, cumulatively, extended over many hours and involved the administration of a great many tests, were these.

In 1993 and 1994, before his involvement in the charged conspiracy, Mr. Stevenson was apparently given mental tests, and scored 49 and 54, respectively, on I.Q. tests (100 is normal); this would make him "moderately mentally retarded." He was evaluated under my orders at the Isaac Ray Center, where he was seen by Dr. Tony Fletcher, Psy.D., and Dr. Eric K. Woodard, M.D. Dr. Fletcher gave him some tests and stated based on his "presentation," Mr. Stevenson would appear to have average intelligence, but his testing results suggested that he functioned intellectually at the level of a seven or eight year old child. Dr. Woodard concluded that Mr. Stevenson has "moderate" mental retardation, and has difficulty understanding abstract concepts, instructions, or plans, may be easily influenced, and does not learn from past mistakes. Nonetheless, Dr. Woodard said, Mr. Stevenson is able to reflect on his crimes and feel guilty about some aspects of selling crack. In addition, Dr. Woodard concluded that Mr. Stevenson intentionally malingered to appear more mentally impaired than he is, but that the severity of his disabilities is difficult to estimate because of his

-4-

lack of motivation.[2] He told Dr. Woodard that he knew it was wrong to sell drugs and that he could do time as a result, but he said he did not know that he could get into this much trouble. The examining physician at the University of Chicago, Dr. Ivan Torres, Ph.D., found that Mr. Stevenson was deliberately malingering, but nonetheless probably retarded, "at least within the borderline to mildly deficient range of intelligence," with an IQ of about 65. Dr. Torres stated that Mr. Stevenson was clearly competent to be tried. He reported that Stevenson knew that it was illegal to sell drugs and that a punishment usually comes with such an act.[3]

The only evidence that Mr. Stevenson was not competent was produced by Dr. Bernard Rubin, M.D., who interviewed Mr. Stevenson for an hour at the Metropolitan Correctional Center in Chicago, and concluded that he has a "rudimentary understanding of the nature of his criminal acts, and its connection with sentencing," but that nonetheless his limited intellectual functioning made it "unlikely" that he was fit to assist his attorney in the defense. His report is somewhat conclusory. He did not make any special efforts to determine whether Mr. Stevenson was malingering. After hearing Dr.

---

[2] It is possible to test for malingering by noticing deviations from expected responses by people who actually have certain mental defects.

[3] These results are consistent with those reached at Mr. Stevenson's examination at the Federal Medical Center by Dr. Christine Scronce, Ph.D., However, I place little weight on her results because I have doubts about the reliability of that examination.

-5-

Rubin testify, I conclude that he is an honest and able medical expert, but the weight of both the medical and psychological evidence and the evidence offered at trial cuts against the reliability of his conclusion here.

Fed. R. Crim. P. 33 allows me to grant "a new trial to that defendant if required in the interest of justice." A jury verdict in a criminal case "is not to be overturned lightly." *United States v. Morales,* 902 F.2d 604, 606 (7th Cir. 1990). But if I believe that "there is a serious danger that a miscarriage of justice has occurred--that is, that an innocent person has been convicted--[I] have the power to set the verdict aside, even if [I do] not think that [I] made any erroneous rulings at the trial." *Id.* The present Rule 33 motion would appear to be one "based on the ground of newly discovered evidence'" *United States v. Woolfolk,* 197 F.3d 900, 905 (7th Cir. 1999). To receive a new trial based on newly discovered evidence, Mr. Stevenson "must demonstrate that the evidence (1) came to [his] knowledge only after trial; (2) could not have been discovered sooner had due diligence been exercised; (3) is material and not merely impeaching or cumulative; and (4) would probably lead to an acquittal in the event of a retrial." *United States v. Ryan,* 213 F.3d 347, 351 (7th Cir. 2000). I am not positive that conditions (1) and (2) apply, because Mr. Stevenson's mental condition was bo secret. But even if they do apply, I do not think that the new evidence of his mental limitations suggests that Mr. Stevenson would

-6-

have been acquitted of the charges against him because he was so mentally impaired that he could not form the requisite intent.

Although it is possible to read the motion for a new trial as applying only to the conspiracy charge, I treat it as if it were a motion for a new trial on all counts in the indictment. Whether Mr. Stevenson has available a diminished capacity defense that the jury should have heard in turn depends on whether his crimes were specific intent crimes or general intent crimes. *United States v. Gruttadauro*, 818 F.2d 1323, 1328 (7th Cir. 1987). A specific intent crime "is one in which the defendant must not only intend the act charged, but also intend to violate the law." *United States v. Birkenstock*, 823 F.2d 1026, 1028 (7th Cir. 1987). With such a crime, the defendant must "specifically intend the consequences of his . . . acts," and "the intent element must be separately and directly proven by the government." *Gruttadauro*, 818 F.2d at 1327. Diminished capacity "is a defense only to specific intent crimes." *United States v. Reed*, 991 F.2d 399, 400 (7th Cir. 1993).

Mr. Stevenson was convicted of three charges: (1) conspiracy to distribute crack; (2) use of minors in this activity, and (3) specific instances of crack distribution. Count I, conspiracy, charged a violation of 21 U.S.C. § 846, "an offense separate from the underlying substantive crime." *United States v. Manganellis*, 864 F.2d 528, 534 (7th Cir. 1988). The underlying offense, charged in count III, was possession with intent to distribute, § 841 (making

-7-

it unlawful "for any person knowingly or intentionally to . . . distribute . . . or possess with intent to . . . distribute . . . a controlled substance"). This "expressly includes the requirement that the distribution be done 'knowingly or intentionally.'" *Manganellis,* 864 F.2d at 534. Conspiracy is a specific intent crime, *id.* at 536, for which a diminished capacity defense is available, but mere distribution is not a specific intent crime because its elements ("knowingly" and "intentionally") "do[] not designate an additional mental state beyond that accompanying the act." *Id.* (citations omitted). No case I can find construes the "use of minors" statute, charged in count III, 21 U.S.C. § 861(a)(1), but its language is structurally identical to the distribution statute, § 841(a)(1), that the Seventh Circuit found not to describe a specific intent crime, and so I conclude that it is not a specific intent crime either. If Stevenson has a diminished capacity defense, it is only to the conspiracy charge.

To prove conspiracy the government must show: "(1) the existence of an agreement to commit an unlawful act; (2) that [the] defendant[] knowingly and intentionally became [a] member[] of the conspiracy; and (3) the commission of an overt act that was committed in furtherance of the conspiracy." *United States v. Gee,* 226 F.3d 885, 893 (7th Cir. 2000). The government must prove that "a defendant knowingly and intentionally joined the charged conspiracy, knowing the conspiracy's aims and intending to achieve

-8-

them." *Id.* In making my determination about Mr. Stevenson's mental state and its effect on his capacity to have the requisite mental state for the specific intent crime of conspiracy, I rely on the expert testimony from the Isaac Ray Center and the University of Chicago--as explained, I discount the conclusions from the Federal Medical Center, and reject that of his own expert--and on the record evidence, most particularly on Mr. Stevenson's own reports of his activities after his arrest, as summarized above.

The weight of the expert testimony is that Mr. Stevenson is moderately retarded, but malingering--trying to appear more limited than he is. That itself bespeaks a certain degree of calculation. I do not accord much importance to any exact numbers arrived at in IQ testing, a very blunt instrument at best. *See The IQ Controversy* (N. Block & G. Dworkin eds. 1976) (raising doubts about the validity of IQ testing as anything more than a rough diagnostic instrument for identifying persons in need of special education); Howard Gardiner, *Frames of Mind: the Theory of Multiple Intelligences* (1993) (discussing different kinds of intelligence not measured by IQ tests). But the medical evidence and overall balance of expert opinion suggests that Mr. Stevenson was not too limited either to stand trial or to have the requisite mental state.

Moreover, there are Mr. Stevenson's own statements about his activities. He admits that he had a responsible position as enforcer or security chief in the Project Kings. He was not simple

hired muscle, but had supervisory responsibilities over other gang members assigned to the security patrol. He had to make sure they were properly armed to defend the gang's monopoly on drug sales. He could describe the impressive arsenal of weapons owned by the gang. He knew that the guns were used for shooting people in defense of that monopoly. He knew that many of the weapons had been dumped in the river after gang shootings to avoid police detection. He knew that the point of all this security was the sale of crack cocaine on a large scale, in which he himself participated, that the violence and drug sales could attract police attention, and he intended to achieve the ends of the conspiracy by acting as an enforcer. His understanding is revealed in his reprimand of fellow gang member McMullen for shooting the "dope fiend" Conn in the leg; that would "heat up" the neighborhood. He told McMullen that he should not have been trigger happy and that he should have hurt Conn "with his hands" instead. That is wicked, but it is not stupid. Mr. Stevenson's understanding is also revealed in his reprimand of Hernandez for shooting Elvis, the Gangster Disciple; shootings of that sort, he said, should be carried out by "shorties" or minors. That is genuinely evil, but it is not stupid.

In view of this, there was ample evidence to show beyond a reasonable doubt that: (1) an agreement to distribute crack existed, namely, among the members of the Project King gang; (2) Mr. Stevenson knowingly and intentionally became a member of this

conspiracy, voluntarily serving as an enforcer with supervisory responsibilities; he understood perfectly well that he was using threats and violence to maintain the gang's drug monopoly, that it was illegal to sell drugs and shoot people as part of that enterprise, that he could go to jail for doing this; but he intentionally agreed to do these unlawful things; and (3) himself took many concrete steps in furtherance of this conspiracy. He rather poignantly says that did not know "that he could get into this much trouble," but that does not bear on his capacity to form the intent to do the prohibited acts and to violate the law.

I do not believe that Mr. Stevenson would have been acquitted had the evidence of his mental limitations been adequately presented to the jury. I conclude that Mr. Stevenson is not so mentally impaired that he could not be guilty of conspiracy to distribute crack because he could not form the necessary specific intent. He could, and the government proved beyond a reasonable doubt that he did. Mr. Stevenson is a violent man who advises the strategic use of children to perform gangland shootings in furtherance of a drug conspiracy, and the perpetration of torture as a reprisal against gang members who misuse the drugs that Mr. Stevenson conspired with his fellow gangsters to sell to ruin the lives of others in the Lathrop Homes. These facts, among other things, show that he formed the requisite specific intent. The motion for a new trial is DENIED.

For these reasons I also DENY Mr. Stevenson's motion for a downward departure.

ENTER ORDER:

*signature: Elaine E. Bucklo*

**Elaine E. Bucklo**
United States District Judge

Dated: March 16, 2001